**O**

# United States District Court
# Central District of California

| | |
|---|---|
| INTERNATIONAL FRUIT GENETICS, LLC, | Case № 2:14-cv-05273-ODW(MRWx) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS [26] AND PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES** |
| P.E.R. ASSET MANAGEMENT TRUST; PIETER EDUARD RETIEF REDELINGHUYS N.O., IN HIS CAPACITY AS TRUSTEE; DEBORAH MARY REDELINGHUYS N.O., IN HER CAPACITY AS TRUSTEE | |
| Defendants. | |

## I. INTRODUCTION

Until recently, Defendants were an approved licensee of Plaintiff for certain table grape varieties in South Africa. This case arises from Defendants' alleged theft, illegal importation into South Africa, and propagation of Plaintiff's proprietary plant materials in violation of the parties' license agreement. Defendants filed two Motions to Dismiss, the first on behalf of P.E.R. Asset Management Trust and the second on behalf of the two trustees. (ECF Nos. 18, 26.) Plaintiff opposed both Motions. (ECF Nos. 20, 28.) However, at the November 24, 2014 hearing, Plaintiff stipulated to dismiss Defendant P.E.R. Asset Management Trust. Therefore, the Court need not

decide the Motion.   For the reasons discussed below, the Court **ORDERS that Plaintiff shall file a Voluntary Notice of Dismissal** as to Defendant P.E.R. Asset Management Trust **within seven days**, and **DENIES** Defendants' Motion to Dismiss as to the trustees.   (ECF No. 26.)   The Court also **DENIES** Plaintiff's request for attorney's fees.  (ECF Nos. 28.)

## II.   FACTUAL BACKGROUND

### 1.   *Plaintiff's Business Model*

Plaintiff International Fruit Genetics, LLC ("IFG") is a California-based company that invents, develops, and licenses proprietary hybrid table grape varieties in the United States and other countries.  (FAC ¶ 9.)   IFG operates a grape-breeding program that invents and develops new table grape varieties, which are of particular interest to commercial grape growers.  (*Id.* ¶ 10.)   In the last thirteen years, IFG has spent millions of dollars on its breeding program.  (*Id.*)   IFG's income is derived principally from the intellectual property rights held in the proprietary plant varieties that it develops.  (*Id.* ¶ 11.)   Consequently, it is critical that these rights are closely monitored and controlled.  (*Id.*)

After IFG develops a table grape variety, the company applies for "plant variety rights" in foreign countries.  (*Id.*)   IFG then enters license agreements with parties in those countries that allow them to grow, evaluate, market, farm, and/or sell table grapes from IFG's proprietary table grape varieties, subject to the terms and conditions of the license agreements.  (*Id.* ¶ 12.)

IFG does not provide its plant materials directly to licensees in foreign countries.  (*Id.* ¶ 13.)   Rather, IFG enters license agreements with one or more table grape nurseries in foreign countries and grants the nurseries the exclusive right to propagate and distribute proprietary plants to IFG-approved licensees in those countries.  (*Id.*)   This provides IFG with an effective method to monitor and control the distribution of proprietary plant material to growers around the world.  (*Id.*)

/ / /

1   Once license agreements are in place, IFG places its proprietary plant varieties
2   into the plant quarantine system of foreign countries.  (*Id.* ¶ 14.)  Most countries with
3   large agricultural sectors require that new plant materials undergo a quarantine
4   process where plants are tested for diseases and pests.  (*Id.*)  When plants pass the
5   quarantine process, they are delivered to IFG-licensed nurseries, which then propagate
6   the plants for distribution to other licensees.  (*Id.*)

7       2.   *Plaintiff and Defendants Enter Testing Agreement, Marketing*
8            *Agreement, and Planting Agreement*

9   In July 2004, IFG entered an International Fruit Genetics Proprietary Variety
10  Testing and Marketing Rights Option Agreement (the "Testing Agreement") with
11  Defendants, P.E.R Asset Management Trust (the "Trust") and two trustees, Pieter
12  Eduard Retief Redelinghuys ("Pieter") and Deborah Mary Redelinghuys
13  ("Deborah").[1]  (*Id.* ¶ 20.)  Pieter is a grape grower and marketer based in South Africa.
14  (*Id.* ¶ 19.)  The Testing Agreement allowed Defendants to evaluate IFG's proprietary
15  table grape varieties and gave Defendants an option to enter a marketing rights
16  agreement.  (*Id.* ¶ 20.)

17  In April 2010, IFG entered an International Fruit Genetics Proprietary Variety
18  Marketing Rights and Trademark License Agreement (the "Marketing Agreement").
19  (*Id.* ¶ 32.)  The Marketing Agreement allowed Defendants to market IFG's proprietary
20  plant varieties to plant growers, market and sell fruit from licensees entitled to grow
21  IFG's proprietary plant varieties, and request that Defendants and IFG or IFG and
22  other plant growers enter planting rights agreements.  (*Id.*)

23  In April 2010, IFG also entered an International Fruit Genetics Proprietary
24  Variety Planting Rights and Trademark License Agreement (the "Planting
25  Agreement").  (*Id.* ¶ 36.)  The Planting Agreement allowed Defendants to grow plants
26  of certain varieties, in certain quantities, and in certain locations with IFG's written
27  consent.  (*Id.*)

28
---
[1]  For convenience, the Court references the trustee Defendants by their first names.

3

### 3.   *Jurisdiction and Venue Listed in Agreements*

The Testing Agreement contained a "Jurisdiction and Venue" section, which provided that the exclusive forums in which the parties could adjudicate any case or controversy would be the "United States District Court, Central District of California or a court of similar standing in the Territory."  (*Id*. Ex. F "General Terms and Conditions.")  The "Territory" was defined as the Republic of South Africa and the Republic of Namibia.  (*Id.* ¶ 30.)  The Marketing Agreement and Planting Agreement provided that the exclusive forum in which the parties could adjudicate any case or controversy would be the United States District Court, Central District of California. (*Id*. Ex. F "General Terms and Conditions.")

The Marketing Agreement and Planting Agreement each contained a provision that in the event of litigation arising out of or in connection with either agreement in the United States District Court, Central District of California, the parties would not contest or challenge the Court's jurisdiction or venue.  (*Id*.)

### 4.   *Defendants' Propagation of Plaintiff Plant Material*

In May 2013, 1,680 plants of IFG's proprietary IFG Ten table grape variety were discovered on Defendants' property.  (*Id*. ¶ 40.)  Other IFG proprietary table grape varieties were found growing on Defendants' property: 540 plants of IFG Nineteen, 1,960 plants of IFG Seventeen, 1,840 plants of IFG Sixteen, 864 plants of IFG Six, and 277 vines of IFG Eleven.  (*Id*. ¶¶ 41-45.)  None of these plants or vines had been supplied to Defendants nor were Defendants authorized to propagate these IFG varieties.  (*Id*.)

On April 4, 2014, IFG alleges, Pieter admitted to IFG's Business Manager that in July 2013 he took a cutting of an IFG Eleven grapevine from the Director of IFG's ranch in California, smuggled it into South Africa, and propagated the cutting to produce four vines on Defendants' property in South Africa.  (*Id.* ¶ 46.)   Pieter

explained, allegedly, it was from these four vines that he propagated the additional IFG Eleven plants that were found on Defendants' property.  (*Id.*)

IFG obtained a DNA test of the IFG Eleven plants found on Defendants' property and those held in quarantine at the nursery.  (*Id.* ¶ 47.)  The test showed that the IFG Eleven plants on Defendants' property were genetically identical to those held at the nursery.  (*Id.*)

### 5. *Plaintiff Terminates All Agreements with Defendants*

In a letter dated May 9, 2014, IFG counsel informed Defendants that their possession and propagation of IFG's plants without authorization violated, among other things, the Testing Agreement and IFG's plant breeder's rights under South African law and demanded Defendants' cooperation in resolving the issues between the parties.  (*Id.* ¶ 48.)

On May 19, 2014, Pieter attended a meeting with IFG executives in California.  (*Id.* ¶ 49.)  During this meeting, Pieter allegedly stated that he took the IFG Eleven grapevine from the IFG General Manager's vineyard in California, smuggled it into South Africa, and propagated it at the Defendants' property.  (*Id.*)  IFG argues that this was but one of many contradictions in Pieter's explanations for how IFG plant materials ended up in large quantities on Defendants' property.  (*Id.*)  IFG alleges that during the same meeting Pieter admitted that he propagated IFG Ten, IFG Nineteen, and IFG Six.  (*Id.*)

In a letter dated June 11, 2014, IFG counsel informed Defendants that their unauthorized propagation of IFG's proprietary plant materials constituted an "Event of Default" and an infringement of IFG's plant variety rights under the Testing Agreement.  (*Id.* ¶ 54.)  The letter stated that IFG was immediately terminating the Testing Agreement.  (*Id.*)

In a letter dated June 26, 2014, IFG counsel informed Defendants that their unauthorized propagations constituted an "Event of Default" under the Marketing Agreement, and an "Event of Default" and infringement of IFG's plant variety rights

under the Planting Agreement.  (*Id*. ¶ 55.)  The letter stated that IFG was terminating the Marketing Agreement and the Planting Agreement.  (*Id*.)

> 6.   *Defendants File for Emergency Relief in South Africa, Plaintiff Files Suit in the United States, and Defendants File Suit in South Africa*

On June 24, 2014, Defendants sought a preliminary injunction from the High Court of South Africa, Western Cape Division, Cape Town, Case No. 10899/2014. (*Id*. ¶ 56.)  The preliminary injunction was intended to force IFG to continue delivering its plant materials covered under the Testing Agreement, Marketing Agreement, and Planting Agreement.  (*Id*. ¶ 60.)  On July 8, 2014, IFG filed the instant action in the United States.  (ECF No. 1)  On July 9, 2014, IFG and Defendants agreed that the injunction sought in South Africa would be submitted to binding arbitration.  (*Id*. ¶ 61.)  On July 23, 2014, the arbitrator found that IFG was not obligated to continue delivering its plant materials to Defendants.  (*Id*. ¶ 62.)  On August 1, 2014, Defendants filed suit in South Africa.  (Dawson Decl. ¶ 3, Ex. A.) That suit is still pending.  (*Id*. ¶ 12.)

> 7.   *The Instant Motions to Dismiss*

Defendants filed two Motions to Dismiss.  (ECF Nos. 18, 26.)  IFG opposed both Motions.  (ECF Nos. 20, 28.)  IFG has requested an award of attorney's fees on the grounds that Defendants' Motions constitute an independent breach of contract because the parties' agreements state that neither side will contest the jurisdiction or venue of the forum(s) listed.  (*Id*.)

## III.   LEGAL STANDARD

### A.   12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).  When a motion to dismiss attacks

1  subject-matter jurisdiction on the face of the complaint, the court assumes that the

2  factual allegations in the complaint are true and draws all reasonable inferences in the

3  plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

4  **B.    12(b)(2)**

5        Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a complaint

6  for lack of personal jurisdiction.  The plaintiff bears the burden of demonstrating that

7  there is jurisdiction.  *Love v. Assoc. Newspapers Ltd.*, 611 F.3d 601, 608 (9th Cir.

8  2010).

9        A district court has the power to exercise personal jurisdiction to the extent of

10  the law of the state in it sits.  Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v.*

11  *Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1988).  California's long-arm jurisdictional

12  statute is coextensive with federal due process requirements.  Cal. Civ. Proc. Code §

13  410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991).

14        For a court to exercise personal jurisdiction over a nonresident defendant

15  consistent with due process, the defendant must have sufficient "minimum contacts"

16  with the forum state so that the exercise of jurisdiction "does not offend traditional

17  notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash., Office of*

18  *Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

19        When there is a forum-selection clause and strong evidence that  it is a vital part

20  of an agreement, "it would unrealistic to think that the parties did not conduct their

21  negotiations, including fixing the monetary terms, with the consequences of the forum

22  clause figuring prominently in their calculations."  *M/S Bremen v. Zapata Off–Shore*

23  *Co.,* 407 U.S. 1, 14 (1972).

24  **C.    12(b)(3)**

25        Federal Rule of Civil Procedure 12(b)(3) provides for dismissal of a complaint

26  for improper venue.  In cases where there is a forum-selection clause, whether the

27  clause is mandatory or permissive is a matter of contract interpretation.  *N. California*

28  *Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.,* 69 F.3d 1034, 1036 (9th

Cir. 1995).  For a forum-selection clause to be mandatory, it must clearly designate a forum as the exclusive one.  *Id*. at 1037.

A court should enforce a mandatory forum-selection clause unless the opposing party demonstrates that (1) formation of the clause was tainted by fraud or overreaching; (2) enforcement would effectively deprive the complaining party of his day in court or deprive him of any remedy; or (3) enforcement would contravene a strong public policy of the forum state.  *M/S Bremen*, 407 U.S. at 12-13 (1972).

If the contractually designated forum is a foreign country, a motion to dismiss under the doctrine of *forum non conveniens* is the appropriate procedural mechanism. *Id.* at 580.  The *forum non conveniens* analysis entails the same balancing-of-interests that courts typically conduct in considering motions to transfer venue, wherein they "must evaluate both the convenience of the parties and various public-interest considerations."  *Id*. at 581.  However, if there is a valid mandatory forum-selection clause, courts should not consider the parties' private interests because by agreeing to the forum-selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Id.* at 581-82.

## IV.   DISCUSSION

The first Motion to Dismiss was filed on behalf of the Trust, and the second was filed on behalf of the trustees, Pieter and Deborah.  The Court will address each Motion separately.

### 1.   *Motion to Dismiss #1: The Trust*

Defendant moved to dismiss Plaintiff's suit against P.E.R. Asset Management Trust.  Plaintiff opposed the Motion.  However, at the November 24, 2014 hearing, Plaintiff stipulated to voluntarily dismiss the Trust.  Therefore, Defendant's Motion is moot.  The Court **ORDERS that Plaintiff shall file a Voluntary Notice of Dismissal** as to Defendant P.E.R. Asset Management Trust **within seven days**.

2.  *Motion to Dismiss #2: The Trustees*

Defendants argue that Plaintiff's suit against Pieter and Deborah must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3). (Mot. 1.)

a.  12(b)(1)

Defendants argue that the Court lacks subject-matter jurisdiction because IFG is a limited liability company and the First Amended Complaint does not allege the citizenship of IFG's members.

Plaintiff has the burden of establishing that the Court has subject-matter jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376-378 (1994).  For purposes of diversity jurisdiction, the citizenship of a limited liability company depends on the citizenship of its members.  *Johnson v. Columbia Properties Anchorage, LP*, 437 F3d 894, 899 (9th Cir. 2006).

With its Opposition to Defendants' Motion, IFG established that IFG and all its members are citizens of and domiciled in California.   (Decl. Pandol ¶¶ 2-4.) Defendants are citizens of and domiciled in South Africa.   Contrary to Defendants' assertion, Plaintiff's Opposition and supporting documents were filed on time by November 3, 2014.  There is no need for Plaintiff to incur the cost of filing a Second Amended Complaint.  The Court finds that the Court has subject-matter jurisdiction.

b.  12(b)(2)

Defendants argue that the Court lacks personal jurisdiction because Defendants are residents of South Africa and do not have the requisite "minimum contacts" with California for the Court to exercise jurisdiction.  (Mot. 4.)

Personal jurisdiction hinges on whether the maintenance of an action against a foreign defendant offends "traditional notions of fair play and substantial justice" in light of defendant's minimum contacts with the forum state.  *Int'l Shoe Co. v. Int'l Shoe Co.*, 326 U.S. at 316.

All the agreements that Defendants signed provided that the United States District Court, Central District of California would be a forum in which the parties could adjudicate any case or controversy.   In fact, Defendants signed two agreements that provided the Central District of California would be the *exclusive* forum.   These two agreements also each contained a provision that in the event of litigation arising out of or in connection with either agreement in the Central District of California, the parties would not contest or challenge the Court's jurisdiction.

As residents of South Africa, Defendants likely considered the forum-selection clauses a vital part of their agreements.   Defendants have provided no convincing argument that it would offend "traditional notions of fair play and substantial justice" to permit Plaintiff to maintain an action against Defendants in the forum state in which they agreed that they could be sued.

c. 12(b)(3)

Defendants argue that the Court should dismiss the Complaint because Los Angeles, CA is not the proper venue for litigation of the instant action since an action relating to the same nucleus of facts is already pending in the High Court of South Africa.   In the alternative, Defendants argue that the Court should stay the action pending resolution of the concurrently pending litigation in South Africa.

The Ninth Circuit has "reject[ed] the notion that a federal court owes greater deference to foreign courts than to our own state courts." *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991).   As a result, the existence of a parallel foreign proceeding is afforded little deference.   The limited instance in which federal courts should contemplate deference to a foreign court is when the foreign court has reached a judgment on the merits.   *Turner Entm't Co. v. Degeto Film GMBH*, 25 F.3d 1512, 1521 (11th Cir. 1994).   Failure to defer to a judgment on the merits "would have serious implications for the concerns of international comity." *Id*.

1    The South Africa action is still pending.   Therefore, there is no foreign

2  judgment on the merits to which the Court should defer.

3    The forum-selection clause provided in two of the parties' three agreements

4  clearly designates the Central District of California as the exclusive forum.   There has

5  been no suggestion from Defendants that the formation of the clause was tainted by

6  fraud, that enforcement would preclude any remedy, or that enforcement would

7  contravene a strong public policy of the forum state.

8    Because there is a valid mandatory forum-selection clause, the Court will not

9  consider the Defendants' argument that litigating the instant action will be less

10  convenient than South Africa.   By signing the agreements, Defendants waived the

11  right to challenge the Central District of California as less convenient for themselves,

12  their witnesses, or for their pursuit of the litigation.   Therefore, the Court will not

13  dismiss the instant action because this venue is less convenient than South Africa.

14    *3.    Attorney's Fees*

15    Plaintiff argues that the Court should award attorney's fees because

16  Defendants' Motion constitutes an independent breach of contract because the parties'

17  agreements state that neither side will contest the jurisdiction or venue of the forum(s)

18  listed.  (ECF No. 28.)

19    The first agreement provided that the exclusive forums in which the parties

20  could adjudicate any case or controversy would be the Central District of California or

21  a court of similar standing in South Africa or Namibia.   Defendants were within their

22  right to argue that South Africa would be more convenient.   Therefore, the Court will

23  not award attorney's fees.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

11

## V.   CONCLUSION

For the reasons discussed above, the Court **ORDERS that Plaintiff shall file a Voluntary Notice of Dismissal** as to Defendant P.E.R. Asset Management Trust **within seven days**, and **DENIES** Defendants' Motion to Dismiss.  (ECF No. 26.) The Court also **DENIES** Plaintiff's request for attorney's fees.  (ECF No. 28.)

**IT IS SO ORDERED.**

November 24, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**